FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 15 2004

CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DALE J. SECATERO,

   **Plaintiff,**

vs.                   **Civil No. 03-385 RLP**

JO ANNE B. BARNHART,
Commissioner of Social Security,

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

  This matter comes before the court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision denying his application for Supplemental Security Income Benefits.

## I. Background

  Plaintiff was born on May 26, 1961. He dropped out of school in the 8th grade. He has been employed for short periods of time as a fire fighter, woodsman and laborer. He speaks Navajo and understands limited English and Spanish. He was involved in an auto accident in approximately 1995 and hasn't worked since that time.

  Plaintiff has received most of his medical care from Paul Gooris[1], a physician's assistant, at the Pine Hill Clinic. He first saw Mr. Gooris on August 19, 1999, complaining of back pain that worsened with exertion, which he had been treating with Ibuprofen. (Tr. 148). Mr. Gooris noted that Plaintiff was able to walk without difficulty, had diffuse thoracic and lumbar muscle spasm,

---

[1]Mr. Gooris is licenced to practice as a Physician's assistant by the State of New Mexico. According to an e-mail sent by the New Mexico Board of Medical Examiners, he is required to work under the supervision of a physician. (Tr. 171-172). Although the Administrative Record does not specifically identify the physician under whom Mr. Gooris works, it does establish that at least one physician, Ann Health, M.D., also works at the Pine Hill Clinic, and has been involved in Plaintiff's care. (See, e.g., Tr. 212, 272-273)



spinal tenderness, negative straight leg raising test and 2+ deep tendon reflexes bilaterally. He prescribed pain medication[2], back exercises (Tr. 148) and advised Plaintiff not to engage in strenuous work until work-up was completed. (Tr. 147).

Plaintiff returned to see Mr. Gooris on December 9, 1999, complaining of recurrent pain after exertion or prolonged travel, which radiated down his legs and into his neck. Mr. Gooris noted spasm in the left parascapular and right psoas muscles on physical examination. He administered an injection of *Toradol*[3], prescribed Ibuprofen and scheduled an MRI examination. (Tr. 145, 143). The MRI indicated "mild degenerative disk changes with mild bulge at (lumbar) 4-5 causing left lateral recess narrowing. No spinal stenosis or neural foraminal narrowing." (Tr. 142).

On December 27, 1999, Plaintiff told Mr. Gooris that the *Toradol* injection has relieved his pain for two days, and that he could control his pain with Ibuprofen. Mr. Gooris referred Plaintiff to Dr. Michael McCutcheon, a spine specialist for evaluation. (Tr. 140).

Dr. McCutcheon examined Plaintiff on January 7, 2000. Plaintiff told Dr. McCutcheon that "currently (he) finds all activities but lying down to increase his pain. He can stand for 20 minutes, sit for 30 minutes, and walk for 45 minutes before pain forces him to stop. (Tr. 136). On physical examination, Dr. McCutcheon noted that Plaintiff was in slight to moderate discomfort, able to walk with a normal gait without an assistive device, however his movement was guarded and stiff. He had 2+ muscle spasm and severe restricted range of motion on extension, and slight restricted range of motion on flexion, lateral bending and lateral rotation. Sensory exam and reflexes were normal,

---

[2] *Methocarbamol*, indicated as an adjunct to rest, physical therapy and other measures for the relief of acute, painful musculoskeletal conditions. *1998 Physicians' Desk Reference*, at 2428.

[3] *Toradol* is a potent nonsteroidal anti-inflammatory drug used for short term management of moderately severe acute pain that requires analgesia at the opioid level. *Id* at 2507.

but straight leg raising from a seated position was positive at 60 degrees without contra-lateral low back pain. (Tr. 137). Dr. McCutcheon diagnosed degenerative lumbar disc disease, stating

> The patient's history and clinical findings are consistent and do give evidence to support the complaints. The prognosis for continued spontaneous recovery is biologically good. Socially it is poor because he has not worked since 1995. He has a normal neurologic examination today, and I don't see a reason for his disability.

(Tr. 138).

Plaintiff was seen by Mr. Gooris on January 27, 2000. Mr. Gooris noted that Dr. McCutcheon "found no apparent cause of disability,"and noted Plaintiff's complaint of pain with any exertion or prolonged sitting, which was temporarily relieved by *Ibuprofen (Motrin)*. (Tr. 133). Mr. Gooris advised to continue using *Ibuprofen* started a trial of *Elavil.* Id.

In March of 2000, Plaintiff was again given *Elavil* for chronic pain control, an additional injection of *Toradol*, and was referred to the University of New Mexico Pain Clinic. (Tr. 129-130). Plaintiff had run out of medication before being evaluated by Mr. Gooris on April 4, 2000. He complained of right lumbar back pain and weakness of his right leg. Physical examination was significant for marked muscle spasm of the psoas[4] muscles on the right. (Tr. 124). He was treated with *Toradol* injections, renewals of prescriptions of *Elavil* and *Motrin*, and was advised not to run out of medication. Id.

Plaintiff's application for benefits was denied on April 6, 2000, following review by an agency non-examining physician, who found that Plaintiff retained the residual functional capacity for light work[5] despite credible complaints of pain. (Tr. 150-151, 154).

---

[4]Psoas is a type of muscle. Dorland's Illustrated Medical Dictionary, Table of Musculi

[5]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and

On April 26, 2000, Plaintiff reported that *Elavil* helped him to sleep at night, but that he still had back pain, despite taking 1600 mg of *Ibuprofen* three times a day, that his pain was increased by prolonged sitting or standing, that he had increased pain and weakness in his right leg with walking, and that he needed help to dress, and to get in and out of bed[6]. (Tr. 121). Mr. Gooris did not record a physical examination. He obtained an appointment for Plaintiff at the University of New Mexico Pain Clinic, increased the dose of *Elavil*, and warned Plaintiff about overuse of *Ibuprofen*. Id. Plaintiff continued to take prescription pain medication during the summer of 2000. (Tr. 120, 119, 118, 230).

On June 23, 2000, Plaintiff's application for benefits was denied for a second time. (Tr. 56-60, 62-64, 156). The second non-examining agency physician supported this denial, despite giving Plaintiff "credit for complaints of persistent pain." (Tr. 156).

Plaintiff was evaluated that the University of New Mexico Pain Clinic on September 11, 2000. (Tr. 199). On physical examination, he walked with an antalgic gait, was tender over his lumbar spine, had limited range of motion, pain with extension but no weakness or edema. The physician diagnosed facet arthropathy, prescribed *Baclofen*, a muscle relaxant, and scheduled facet injections.[7] Plaintiff returned to the University of New Mexico Pain Clinic on October 17, 2000 the

---

pulling when sitting is involved. SSR 83-10.20; C.F.R. §416.967(b)

[6]Plaintiff reiterated several of these functional problems in his reconsideration disability report, prepared in May, 2000. (Tr. 104).

[7]The Administrative Record contains an unsigned letter dated September 8, 2000, to Mr. Gooris from Dr. Zuniga, attending physician at the University of New Mexico Pain Clinic. The physical examination recorded in that letter states:

> The patient is a middle age male patient who was not in distress. He walked with an obvious antalgic gait. Significant findings on examination were moderate, paravertebral muscle spasm in the lumbar area. He had bilateral paravertebral tenderness and

injections in to the L3/4, L4/5 and L5/S1 spaces, bilaterally. (Tr. 194-196). Subsequent evaluation at the Pine Hill Clinic on October 26, 2000, indicated that the injections had failed. Plaintiff continued to have pain with marked left psoas and thoracic paraspinous muscle spasm. Mr. Gooris contacted a physician at the University of New Mexico Pain Clinic, who recommended increasing the dosage of *Baclofen* and *Elavil*, and initiating *Gabapentin*[8] and a TENS unit. (Tr. 174).

On January 31, 2001, Plaintiff developed shooting pains in his back and stated he "blacked out" after trying to shovel snow. He continued to have muscle spasm on examination, and was given another *Toradol* injection. (Tr. 245).

On February 1, 2001, Mr. Gooris filled out a medical assessment of ability to do work related activities, which would exclude a residual functional capacity to do even sedentary work[9]. (Tr. 166-170). Plaintiff started physical therapy on the same day. (Tr. 206). Examination by the physical

---

absolutely refused to extend his lumbar spine. He had grade IV weakness of the right lower extremity, but no sensory deficits. DTRs are 2+ bilaterally and straight leg raising was negative bilaterally. He clearly has facet arthropathy and degenerative joint disease. He have schedule him for a factet injection bilaterally and we will see him after that. We have also started him on *Baclofen* for his paravertebral muscle spasms. He may not be a candidate for epidural steroid injection at this time.

(Tr. 197).

[8]Gabapentin is an anticonvulsant sometimes prescribed to treat neuropathic pain. http://www.centerwatch.com/patient/drugs/dru783.html

[9]The form filled out by Mr. Gooris indicates that Plaintiff can sit/stand/walk for a maximum of 1 hour at a time; that he can sit for a total of two hours a day, stand for a total of two hours a day and walk for a total of one hour a day; that he can frequently lift up to 10 pounds and occasionally lift from 11 to 20 pounds provided bending is not required; that he can frequently carry up to 10 pound and occasionally carry from 11 to 20 pounds if the object carried is not bulky and can be carried close to his body; that he has no grasping or fine manipulation impairments; that he can push/pull and use arm controls provided they require low weight and low resistence; that he can not push or pull leg controls; that he can not bend, crawl, climb, work at unprotected heights, be around machinery or drive automotive equipment, and that he can squat and reach only occasionally. Mr. Gooris stated that Plaintiff was additionally limited by worsening back pain with muscle spasm and near-syncope. (Tr. 168-169).

5

therapist on February 16 documented major restriction of motion on flexion and extension, positive straight leg raising test, some decreased sensation, and some decrease in motor ability related to the lower extremities. (Tr. 203-205).

On March 11 Plaintiff was evaluated by Ann Heath, M.D., at the Pine Hill Clinic. She documented objective signs of back pain and dysfunction including decreased range of motion, diffuse tenderness of lumbo-sacral and paralumbar areas, decreased deep tendon reflexes (2/4 left knee, 0/4 right knee, 1/4 left ankle, 0/4 right ankle), decreased sensation to light touch right leg, positive straight leg raise at 30 degrees on the right, and positive paraspinal muscle spasm. Dr. Heath noted that Plaintiff had required frequent Toradol shots, postural limitations, and stated that Plaintiff was "totally disabled due to back pain." (Tr. 272-273). From March until the date of his administrative hearing, Plaintiff continued to demonstrate objective signs of back pain.[10] A second MRI was performed on September 27, 2001, which was read as completely normal, with no evidence of neural foraminal stenosis, significant disk degeneration or protrusion or facet osteoarthritis.[11] (Tr. 228).

Plaintiff was treated at the Pine Hill Clinic on two occasions after his administrative hearing, but before the ALJ rendered his decision. On each occasion he received an injection of *Toradol* for chronic back pain. (Tr. 268-268).

---

[10]5/14/01 - decreased lumbar lordosis, tenderness at the superior SI joints, L5/S1, bilaterally (Tr. 255); 7/16/01 - decreased lumbar lordosis, tenderness at the right SI aria, (+) SLR on right (Tr. 259); 8/29/01 - decreased range of lumbar motion; tender at SI and paraspinal muscles, decreased reflexes (1/4); decreased strength of the lower extremities (4/5), (+) SLR (Tr. 262); 11/05/01 - right psoas muscle spasm (Tr. 221).

[11]This report was submitted to the Appeals Council. The Appeals Council did not address the inconsistently between this report compared to the earlier MRI and the clinical findings of Drs. McCutcheon and the physicians that the University of New Mexico Pain clinic.

There is medical evidence that as of March 2000 and through at least January 2001, Plaintiff was assisted by a "caretaker," his sister in law, who provided meal preparation, house cleaning and laundry, personal hygiene and grooming, dressing, transfers and driving. (Tr. 129, 122, 213, 131, 239). The ALJ did not mention this evidence. Rather, he discounted Plaintiff's credibility on the issue of needing a caretaker by referring to a questionnaire prepared by his wife on June 5, 2000, (Tr. 108-111) which did not mention Plaintiff needing help with bathing or dressing, other than to be reminded. (Tr. 20). At his administrative hearing, Plaintiff did not mention having a caretaker, and stated that he wife assisted him with bathing and dressing. (Tr. 50). In history given to Dr. Heath on March 11, 2001, he stated that he was unable to walk any distance, drive, grocery shop, cook, do household chores, chop wood, or put on shoes without help. (Tr. 273).

## II.   ALJ's Decision

The administrative law judge (ALJ) denied the claim at step five of the evaluation sequence. **See generally Williams v. Bowen**, 844 F.2d 748, 750-52 (10th Cir.1988) (describing five-step sequence). At step one, he found that claimant had not worked at substantial gainful activity since the date of his alleged onset of disability. At step two, he found that Plaintiff's had "severe" degenerative lumbar disc disease. At step three, he found that this impairment did not meet any of the listings. At step four, he rejected Plaintiff's complaints of disabling pain and held that he retained the residual functional capacity (RFC) to perform the full range of light work. As a consequence of his step-four RFC finding, the ALJ found at step five that claimant was not disabled under Rule 202.17 of the medical-vocational guidelines (the "grids"), **see also** 20 C.F.R., pt. 404, subpt. P, app. 2, Rule 202.17. The Appeals Council denied review, making the ALJ's decision the final agency decision.

### III.    Scope of Review

I review the ALJ's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. **See O'Dell v. Shalala**, 44 F.3d 855, 858 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted). In making the substantial evidence determination, I neither reweigh the evidence nor substitute my judgment for that of the ALJ. **See Thompson**, 987 F.2d at 1487. If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. **42 U.S.C. §405(g)**. Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. **Richardson v. Perales**, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a scintilla, Id., at 403, but may be less than a preponderance. **Flint v. Sullivan**, 951 F.2d 264, 266 (10th Cir. 1991).

### IV.    Issues on Appeal

Plaintiff argues that the ALJ erred in applying the grids. Based on the record and the applicable law, claimant's claims of error have merit.

### V.    Legal Analysis

At step five, the ALJ has the burden to prove that the claimant retains the RFC to perform other work. **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir.1993). "It is not [the claimant's] burden ... to prove [he] cannot work at any level lower than her past relevant work; it is the [agency's] burden to prove that [he] can." Id. at 1491.

In certain cases, an ALJ may rely conclusively on the grids, through which the agency "has taken administrative notice of the number of jobs that exist in the national economy at the various

8

functional levels (i.e., sedentary, light, medium, heavy, and very heavy)." **Channel v. Heckler**, 747 F.2d 577, 579 (10th Cir.1984) (*per curiam*).  An ALJ may not rely conclusively on the grids, however, unless the claimant has the RFC for a full range of a level of work on a daily basis and can do most of the jobs in that range.  Id. at 579-80 (discussing relevant regulations).  The use of the grids is inappropriate when a claimant has a nonexertional impairment, such as pain, unless the ALJ can support a finding that the nonexertional impairment is insignificant. **Thompson**, 987 F.2d at 1488; 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(e).  If the ALJ cannot rely conclusively on the grids in this case, he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." **Soc. Sec. R. 96-9p**, 1996 WL 374185, at *5.

The ALJ made several errors, all of which undermine his application of the grids.  First, in assessing Plaintiff's residual functional capacity, he relied on selective portions of Dr. McCutcheon's report, ignoring completely Dr. McCutcheon's statement that Plaintiff's history and clinical findings were consistent and supported his complaints of pain. (Tr. 19, 138)  An ALJ may not engage in a selective evidentiary review. **See Sisco v. U.S. Dept. of Health and Human Services**, 10 F.3d 739, 743 (10th Cir.1993); **Teter v. Heckler**, 775 F.2d 1104, 1106 (10th Cir.1985) (finding error in ALJ's rejection of certain reports as based on inadequate findings when they were comparable to reports found sufficiently detailed); **Sherman v. Apfel**, No. 97-7085, 1998 WL 163355, at 5 (10th Cir. Apr.8, 1998) (unpublished order and judgment) (finding error in mentioning only parts of testimony while leaving out other important parts); **see also Switzer v. Heckler**, 742 F.2d 382, 385-86 (7th Cir.1984) (Secretary's attempt to use only portions of report favorable to her position, while ignoring other parts, is improper.)

9

Second, the ALJ misread or mischaracterized steps Plaintiff used to treat his pain. The ALJ stated the he took one tablet of *Ibuprofen* three times a day for pain. (Tr. 20). The record clearly establishes that Plaintiff has required repeated injections or *Toradol*, had unsuccessful facet injections, and has been given prescriptions for *Elavil, Baclofen* and *Gabapentin* in a attempt to control his pain complaints.

Third, the ALJ failed to discuss the opinions and findings of Ann Heath, M.D., a treating physician. The opinions of a treating physician though not dispositive on the issue of disability, **Castellano v. Sec'y of Health & Human Serv's,** 26 F.3d 1027, 1029 (10th Cir. 1994), must be given controlling weight if well supported and consistent with other substantial evidence of record. **Drapeau v. Massanari,** 255 F.3d 1211, 1213 (10th Cir. 2001). Such an opinion must be considered in relation to its consistency with other evidence, the length and nature of relationship, the frequently of examination, and extent to which supported by objective medical evidence. 20 C.F.R. 404.1527(d)(2). There is no indication that the ALJ considered Dr. Heath's evidence, other than to mischaracterize one record she prepared, which contradicted his observations concerning whether Plaintiff's hands appeared to be work-worn. (Compare Tr.49-50 and 20 with Tr. 212).

Finally, the ALJ applied incorrect legal principles by conclusively applying the grids in light of uncontroverted evidence that Plaintiff experiences significant pain. Every medical evaluator of record has indicated that Plaintiff's complaints of pain are valid. The use of the grids is inappropriate because under this record, the ALJ can not find that Plaintiff's pain is insignificant. **Thompson,** 987 F.2d at 1488; 20 C.F.R., pt. 404, subpt. P. app. 2, § 200.00(e).

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand is granted. This matter is remanded to the Commissioner of Social Security for Additional Proceedings. The

10

Commissioner is instructed to reassess Plaintiff residual functional capacity.  In so doing the Commissioner shall consider the records and opinions of treating physician, Ann Heath, the complete record of Dr. McCutcheon, and all medical and nonmedical means Plaintiff has used to control pain.  The Commissioner shall also consult with a vocational expert at step five of the sequential evaluation process.

       IT IS SO ORDERED.

RICHARD L. PUGLISI
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**